IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATRECE RAINE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COURTYARD BY MARRIOTT-<br>PLEASANT HILL CORPORATION,<br><br>　　　　Defendant. | Case No. 21-cv-02187-MMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 51 |

Before the Court is defendant Courtyard Management Corporation's ("Courtyard")[1] Motion for Summary Judgment, filed December 29, 2022, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Katrece Raine ("Raine") has filed opposition, to which Courtyard has replied.[2] Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[3]

//

//

---

[1] Defendant states it was "erroneously sued as Courtyard by Marriott-Pleasant Hill." (See Def.'s Mot. for Summ. J. ("Def.'s Mot.") at 1:5-6, Dkt. No. 51.)

[2] Raine's request to file a sur-reply is hereby DENIED. (See Pl's Obj. to Def.'s Improper New Evid. Submitted for the First Time on Reply at 2:9-10, Dkt. No. 60.) Contrary to Raine's assertion in support of such request, Courtyard has not "improperly submitted . . . [n]ew evidence" in its Reply (see id. at 2:4-19), but, rather, evidence contradicting Raine's characterization of deposition testimony to which she cites in her Opposition. See, e.g., Zkey Invs., LLC v. Facebook Inc., 225 F. Supp. 3d 1147, 1158 (C.D. Cal. 2016), aff'd, 708 F. App'x 681 (Fed. Cir. 2018) (holding "where evidence is submitted in direct response to proof adduced in opposition to a motion it is not new") (internal quotation and citation omitted). In any event, the Court, in arriving at the conclusions set forth herein, has not relied on the evidence to which Raine objects.

[3] By order filed April 4, 2023, the Court took the matter under submission.

# BACKGROUND[4]

Raine is an African American female who worked as the general manager of a Courtyard by Marriott[5] hotel, located in Pleasant Hill, from February 2003 until she was terminated on October 30, 2020.  (See Decl. of Elvis Tran in Opp'n to Def.'s Mot. for Summ. J. ("Tran Decl."), Ex. A ("Raine Dep.") at 21:22-22:9 (Dkt. No. 58-1).)

At the time of her termination, Raine reported to Paul Black ("Black"), a regional manager.  (See id. at 24:8-10.)  Sometime in October 2020, a Marriott employee sent Black screenshots of four posts Raine had posted on her Facebook page and about which the employee was concerned, specifically, a photograph of Raine wearing a shirt with the statement "Arrest The Cops Who Killed Breonna Taylor," a depiction of an African American woman wearing a mask comprised of white hands covering her mouth, a post containing profanity, and a post sharing a news article about the divestiture of the hotel where Raine worked.  (See Decl. of David L. Cheng in Supp. of Def.'s Mot. for Summ. J. ("Cheng Decl."), Ex. A ("Black Dep.") at 36:5-10, 37:1-5, 52:23-25 (Dkt. No. 51-1).)  Black reviewed the posts but "did not believe" they "violated any of Marriott's policies," although the last post "caused [him] concern."  (See id. at 37:10-14, 85:6-10.)  Black forwarded the four posts to Tiffany Schafer, Vice President of Human Resources (see id. at 38:25-39:2, 39:23-25), who, in turn, on October 15, 2020, forwarded them to Lynda Laubach, Area Director of Associate Relations (see Cheng Decl., Ex. B ("Laubach Dep.") at 56:9-13).

Also on October 15, 2020, another Marriott employee contacted Black to express concern about Raine's Facebook posts,[6] after which Black looked at Raine's Facebook

---

[4] The following facts are undisputed or stated in the light most favorable to Raine. See Irish v. City of Sacramento, 2007 WL 570258, at *3 (E.D. Cal. Feb. 21, 2007) ("The evidence must be viewed in the light most favorable to the nonmoving party.").

[5] Courtyard operates hotels under the Courtyard by Marriot brand, which is owned by Marriott International, Inc. ("Marriott").

[6] The record before the Court does not reflect additional specification as to the content of these posts.

page. (See Cheng Decl., Black Dep. at 30:2-19, 37:17-22.) Thereafter, on October 16, 2020, Black sent Laubach several posts he found that caused him concern, specifically, a video filmed in the hallway of the hotel and featuring a collaboration between a business called EBC[7] and Raine's business, called Make It Raine,[8] by which she created and sold bejeweled face masks ("Hallway Video"), as well as three sets of photographs, each of a different Courtyard employee at work wearing a Make It Raine mask along with a Courtyard uniform and/or tag (collectively, "Mask Photos"). (See id. at 59:24-60:9, Ex. 2 at 2-6; Cheng Decl., Laubach Dep. at 83:16-25, Ex. 1 at 2-3.) Black and Laubach also discussed the above-referenced two reports Black had received from Marriott employees, as well as the four posts he had received from the first of those two employees. (See Cheng Decl., Laubach Dep. at 56:4-7, Ex. 1 at 1.) Black asked Laubach to conduct an investigation, which Laubach subsequently began, in order to determine whether Raine's conduct violated any company policies. (See Cheng Decl., Black Dep. at 60:17-24, Laubach Dep. at 64:9-12.)

On October 20, 2020, Laubach phoned Raine to discuss all of the above-referenced posts (see Cheng Decl., Laubach Dep., Ex. 1 at 1-2; Tran Decl., Raine Dep. at 106:23-108:25), beginning with the Breonna Taylor post, which Laubach called "unprofessional, . . . inappropriate, . . . and embarrassing" (see Tran Decl., Raine Dep. at 107:12-23). That same day, Black sent Laubach two more posts by Raine on her Facebook page, specifically, a video featuring another collaboration between EBC and Make It Raine, this one filmed in a hotel guestroom where James Calhoun ("Calhoun") of

---

[7] EBC is an acronym for "Everybody's Cool." (See Cheng Decl., Black Dep., Ex. 2 at 3.)

[8] To the extent Raine, in her Opposition, characterizes Make It Raine as a "hobby" (see Pl.'s Opp'n to Mot. for Summ. J. ("Pl.'s Opp'n") at 11:8, Dkt. No. 58), the evidence she submits (see Tran Decl., Raine Dep. at 98:6-7 (testifying she "ha[s] a business card" for Make It Raine)), as well as the undisputed evidence submitted by Courtyard (see Cheng Decl., Black Dep., Ex. 2 at 3 (showing caption for Hallway Video reading "Please patronize both of these awesome #AfricanAmerican #BayArea #Businesses #MakeItRaine #Everybody'sC[ool]")), makes clear it nonetheless is also a business.

3

EBC was staying ("Guestroom Video"), as well as a video Raine filmed while reviewing with a Marriott vendor the construction work it had done at the hotel and "calling out" the vendor's mistakes to the vendor's apparent displeasure ("Construction Video").  (See Cheng Decl., Laubach Dep., Ex. 1 at 2-3.)  Several days later, on October 23, 2020, Laubach spoke with Raine by videoconference, and, in response to Laubach's questions about the Guestroom Video, Raine acknowledged she had given a discounted rate to Calhoun.  (See id., Ex. 1 at 3, 6; see also Tran Decl., Raine Dep. at 104:17-18, 115:21-24 (testifying "Yes" in response to "It sounds like you're saying that [Calhoun] paid some kind of discounted rate?  Is that correct?").)

In concluding the investigation, Laubach determined none of the four posts Black had received from the first Marriott employee violated any company policy, but that Raine's later-discovered posts and conduct violated multiple company policies.  (See Cheng Decl., Laubach Dep., Ex. 1 at 3-4, 6.)  Subsequently, Laubach, Schafer, and legal counsel for Marriott recommended Raine's termination, after which Black, on October 30, 2020, terminated Raine, providing her with a document that listed the reasons for her termination ("Termination Document").  (See Cheng Decl., Black Dep. at 98:18-21, Ex. 9; Cheng Decl., Ex. C ("Schafer Dep.") at 24:9-15.)

On December 23, 2020, Raine filed an action in the Superior Court of California,[9] alleging "race [was a] motivating factor[] contributing to [her] termination by [Courtyard]" and that "said act . . . constitute[d] employment discrimination under the laws of California."  (See Compl. ¶ 28, Dkt. No. 1-1.)  Based on said allegations, Raine asserts two causes of action, namely, (1) Discrimination in Violation of California's Fair Employment and Housing Act ("FEHA"), see Cal. Gov't Code § 12940(a), and (2) Wrongful Termination in Violation of Public Policy.

In its motion, Courtyard argues it is entitled to summary judgment on both claims.

---

[9] On March 29, 2021, the action was removed to the United States District Court for the Northern District of California on the basis of diversity jurisdiction.

**LEGAL STANDARD**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact. The moving party need not "produce evidence showing the absence of a genuine issue of material fact," but may discharge its burden simply by pointing out "that there is an absence of evidence to support the nonmoving party's case." See Celotex, 477 U.S. at 325. Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." See id. at 324 (internal quotation and citation omitted). "When the moving party has carried its burden under Rule 56[ ], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light most favorable to the party opposing the motion." See Matsushita, 475 U.S. at 587 (internal quotation and citation omitted).

**DISCUSSION**

Under FEHA, it is unlawful "[f]or an employer, because of the race . . . of any person,[10] to . . . discharge the person from employment." See Cal. Gov't Code

---

[10] Although FEHA prohibits discrimination against an employee based on a perception that the employee "is associated with a person" who has a "characteristic"

5

§ 12940(a).

"In employment discrimination cases under FEHA, plaintiffs can prove their cases in either of two ways: by direct or circumstantial evidence." See DeJung v. Superior Ct., 169 Cal. App. 4th 533, 549 (2008) (citing Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 354 (2000)). "Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption." See id. at 550. Where direct evidence is unavailable, a plaintiff may rely on circumstantial evidence, to which California courts apply the three-stage burden-shifting test established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See Guz, 24 Cal. 4th at 354 (noting "McDonnell Douglas test reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially").

"Under McDonnell Douglas . . . , the plaintiff has the initial burden of establishing a prima facie case of discrimination." See Chisolm v. 7-Eleven, Inc., 383 F. Supp. 3d 1032, 1048 (S.D. Cal. 2019), aff'd, 814 F. App'x 194 (9th Cir. 2020). "While the plaintiff's prima facie burden is not onerous, [he/she] must at least show actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a prohibited discriminatory criterion." See Guz, 24 Cal. 4th at 355 (internal quotations, citations, and alteration omitted).

Once the plaintiff establishes a prima facie case, "a presumption of discrimination arises and the burden shifts to the defendant to show that the adverse employment action was taken for a legitimate, non-discriminatory . . . reason." See Chisolm, 383 F. Supp. 3d at 1048. "Stating a legitimate, non-discriminatory, non-retaliatory reason

---

protected under the statute, e.g., race, see Cal. Gov't Code § 12926(o), Raine does not argue nor has she offered any evidence to support an associational theory, e.g., that Raine was terminated for having an "acquaintance or friendship" with Breonna Taylor, see Michelucci v. Cnty. of Napa, 2019 WL 1995332, at *5 (N.D. Cal. May 6, 2019), or that Raine was "associati[ing] with or advoca[ting] on behalf of protected employees," see Thompson v. City of Monrovia, 186 Cal. App. 4th 860, 877 (2010).

negates the presumption of discrimination and shifts the burden back to the plaintiff to demonstrate that the proffered reason was a pretext for discrimination." See id.

Once the burden shifts back to the plaintiff, such plaintiff "[t]o avoid summary judgment, . . . must do more than establish a prima facie case and deny the credibility of the defendant's witnesses." See Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270 (9th Cir. 1996) (internal quotation, citation, and alteration omitted). Rather, the plaintiff "must produce specific, substantial evidence of pretext." See id. (internal quotation and citation omitted).

Here, Courtyard argues there is neither direct nor circumstantial evidence to support Raine's claim of racial discrimination. Specifically, Courtyard argues, there is no direct evidence showing discriminatory animus nor has Raine established a prima facie case by circumstantial evidence, and, in the alternative, that it has proffered legitimate, nondiscriminatory reasons for her termination, as to which Raine fails to show pretext. The Court considers these arguments below.

**A. Direct Evidence**

Raine contends she has offered "direct evidence of racial animus," based on the following testimony:

> [T]he initial reason why I was called into the office by Lynda Laubach was because of my Black Lives Matter post. She was extremely upset; she told me that I was unprofessional. She asked me why I even posted a post like that. She said it was embarrassing and inappropriate . . . .

(See Pl.'s Opp'n at 6:23-7:9 (citing Tran Decl., Raine Dep. at 103:22-104:4).)

The above comments, however, do not constitute direct evidence of discriminatory animus. As noted, direct evidence "proves the fact of discriminatory animus without inference or presumption," see DeJung, 169 Cal. App. 4th at 550 (emphasis added). In that regard, courts have found direct evidence of discriminatory animus in remarks such as an interview panel member's comment that "Ted's a great guy, but we're looking for someone younger," see id. (reversing summary judgment in favor of defendant on FEHA claim alleging age discrimination in hiring), a supervisor's comment that he "did not want

7

to deal with another female," see Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998) (reversing summary judgment in favor of defendant on FEHA claim alleging sex discrimination in connection with promotion), and a manager's reference to an employee as a "dumb Mexican," see Cordova v. State Farm Ins. Companies, 124 F.3d 1145, 1149 (9th Cir. 1997) (reversing summary judgment in favor of defendant on Title VII claim alleging sex discrimination in admission to company training program).[11]  Here, by contrast, the above-quoted remarks contain no disparaging or other negative comments about African Americans.  Rather, Raine is essentially asking the trier of fact to infer a discriminatory animus from Laubach's displeasure about her Breonna Taylor post.[12]

Accordingly, the Court turns to the circumstantial evidence.

**B. Circumstantial Evidence**

    **1. Prima Facie Case**

"To state a prima facie case of race . . . discrimination under FEHA, a plaintiff must show . . . : (1) [he/she] was a member of a protected class, (2) [he/she] was performing competently in the position he held, (3) [he/she] suffered an adverse employment action, and (4) some other circumstance suggests discriminatory motive." See Chisolm, 383 F. Supp. 3d at 1059 (internal quotation, citation, and alteration omitted).

---

[11] "California courts consistently look to Title VII for guidance in interpreting FEHA." See Kohler v. Inter-Tel Techs., 244 F.3d 1167, 1172-73 (9th Cir. 2001) (collecting cases); see also Hittle v. City of Stockton, 2016 WL 1267703, at *5 (E.D. Cal. Mar. 31, 2016) (noting "claims of discrimination under FEHA and Title VII may be assessed under the same standards").

[12] Even viewing Laubach's expressed displeasure as circumstantial evidence, Raine fails to show an inference of such animus can be drawn therefrom.  As Courtyard points out, "affiliation with the Black Lives Matter movement" is "political" in that "any person, regardless of race, could support the Black Lives Matter movement" (see Def.'s Mot. at 9:13-15), and concern about involving the Marriott brand in a political statement by posting such statement alongside posts about Marriott constitutes an "obvious alternative explanation" (see id. at 11:5-20 (quoting Frith v. Whole Foods Mkt., Inc., 38 F.4th 263, 275 (1st Cir. 2022))); see also Frith, 38 F.4th at 275 (noting "[c]ommon sense . . . suggests [defendant employer] would have had non-race-based reasons . . . for prohibiting the wearing of Black Lives Matter masks").

Here, Raine has submitted sufficient evidence to establish a prima facie case of racial discrimination, in particular, evidence that (1) she is African American, (2) she had been performing her job competently, (3) her employment was terminated, and (4) she was replaced by a Caucasian individual. See Nidds v. Schindler Elevator Corp., 113 F.3d 912, 917 (9th Cir. 1996) (holding, to establish prima facie case, "very little is required").

Accordingly, the burden shifts to Courtyard to rebut the resulting presumption of discrimination.

### 2. Legitimate, Non-Discriminatory Reasons

Courtyard argues it has articulated legitimate, non-discriminatory reasons for terminating Raine's employment. As set forth below, the Court finds Courtyard has met its burden.

In particular, Courtyard has submitted undisputed evidence that Raine's conduct, as stated in the Termination Document, violated five company policies, namely, Outside Business Activities, Conflict of Interest,[13] Solicitations, Global Room Rate Discount Policy, and Business Conduct Guide, which violations the Court next discusses.

First, the evidence is undisputed that Raine violated the Outside Business Activities policy, which prohibits employees from "allow[ing] [an] outside business activity to utilize or otherwise leverage the good will and reputation of [Marriott] in the course of the outside business activity's operations," as well as from using company "assets . . . in connection with outside business activities," and from utilizing "[o]ther company associates . . . in the conduct of an outside business." (See Decl. of Lynda Laubach in Supp. of Def.'s Mot. for Summ. J. ("Laubach Decl."), Ex. 1 at 1-2 (Dkt. No. 51-2).) Specifically, the Hallway Video, Mask Photos, and Guestroom Video show Raine using Courtyard assets and employees to promote her business, Make It Raine.

---

[13] Although Conflict of Interest is not a standalone policy, but rather a section within a policy titled Ethical Conduct, both parties, in their briefing, refer to the section as a policy.

9

Second, the evidence is undisputed that Raine violated the Conflict of Interest policy, which prohibits employees from "engag[ing] in outside business activities that detract from job performance, interfere with the ability of other associates to perform their jobs, or result in an actual or apparent conflict of interest," as well as from "using corporate property or information or personal position for unlawful or improper gain." (See id., Ex. 3 at 3.) Specifically, the above-cited evidence pertaining to the Hallway Video, Mask Photos, and Guestroom Video also shows Raine violating this policy.

Third, the evidence is undisputed that Raine violated the Solicitations policy, which prohibits the "[s]olicitation of associates during work time." (See id., Ex. 2 at 27.) Specifically, the Mask Photos show Raine violated this policy.

Fourth, the evidence is undisputed that Raine violated the Global Room Rate Discount Policy, which authorizes a discounted rate for Marriott "associates," their "[i]mmediate family members," and Marriott "Board of Directors" only. (See Laubach Decl., Ex. 4 at 2.) Specifically, Raine acknowledged giving a discounted rate to Calhoun of EBC.

Fifth, the evidence is undisputed that Raine violated the Business Conduct Guide, which prohibits "any communication . . . that might disparage, defame, or damage Marriott's . . . vendors, or other business partners." (See Laubach Decl., Ex. 5 at 30.) Specifically, the Construction Video shows Raine violating this policy.

Accordingly, the burden shifts back to Raine to demonstrate the reasons proffered by Courtyard were pretextual.

### 3. Pretext

To make a sufficient showing as to pretext, a plaintiff "must offer substantial evidence that the employer's stated non-discriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination." See Hersant v. Dep't of Soc. Servs., 57 Cal. App. 4th 997, 1004–05 (1997); see also Vasquez v. Cnty. of Los Angeles, 349 F.3d 634, 641

10

1  (9th Cir. 2003) ("A plaintiff can show pretext directly, by showing that discrimination more
2  likely motivated the employer, or indirectly, by showing that the employer's explanation is
3  unworthy of credence.").

4  Here, at the outset, Raine argues the above-listed policy violations were
5  "innocuous" in that Black was aware of, and in some instances, encouraged the behavior
6  for which Courtyard says she was terminated.  (See Pl.'s Opp'n at 10:4.)  To the extent
7  Raine argues Black was aware she was "providing . . . masks to her employees" (see id.
8  at 11:14-15 (citing Tran Decl., Raine Dep. at 98:2-10)), however, the deposition contains
9  no such testimony.  Similarly unavailing is her assertion that Black encouraged her to
10 "post images and videos from within the hotel" (see id. at 10:24 (citing Tran Decl., Raine
11 Dep. at 137:3-17)), as Raine fails to offer any evidence even suggesting Black knew
12 about or encouraged anyone to engage in such behavior in a way that would violate a
13 company policy.  Lastly, although Raine did testify at her deposition that Black and
14 Laubach, given the low occupancy during the COVID-19 pandemic, authorized her to
15 "accept any rate" (see Tran Decl., Raine Dep. at 115:5-20), such evidence, in light of her
16 numerous other violations, does not constitute substantial evidence of pretext.

17 Next, Raine argues other employees were treated more favorably.  "A showing
18 that the [employer] treated similarly situated employees outside [plaintiff's] protected
19 class more favorably would be probative of pretext," see Vasquez, 349 F.3d at 641, for
20 example, in the context of a racial discrimination claim brought by an African American
21 employee, "evidence that white employees involved in acts . . . of comparable
22 seriousness . . . were nevertheless retained or rehired," see McDonnelsl Douglas, 411
23 U.S. at 804; see also Vasquez, 349 F.3d at 641 (holding "individuals are similarly situated
24 when they have similar jobs and display similar conduct").  Here, as set forth below,
25 Raine fails to offer any evidence that anyone similarly situated was treated more
26 favorably.

27 First, Raine argues that Laubach, by criticizing her Breonna Taylor post as
28 "inappropriate, unprofessional, and embarrassing" (see Pl.'s Opp'n at 19:17), treated her

11

1 less favorably than Schafer, who is Caucasian and who had posted on her Facebook
2 page a message containing profanity and an image of a woman carrying a tote bag with
3 the words "Ho Bag," which posts were sent to Black and Laubach by Raine on October
4 30, 2020 (see Tran Decl., Ex. D ("Laubach Dep.") at 171:6-12, Ex. 7 at 5-6).  Raine
5 submits no evidence, however, to support her assertion that Laubach "did not make any
6 similar remark to Schafer . . . about [Schafer's] posts" (see Pl.'s Opp'n at 19:18), nor is
7 Raine's assertion that "Laubach . . . decided to never investigate Schafer" (see id. at
8 12:20-21 (citing Tran Decl., Laubach Dep. at 171:6-172:19, Ex. 7)) supported by the
9 record, in that Laubach testified she "spoke with [Schafer] as part of the investigation"
10 (see Tran Decl., Laubach Dep. at 171:24-25).[14]  Moreover, Schafer "explained . . . there
11 was nothing in her Facebook page about Marriott" (see id. at 172:10-11), and Raine
12 submits no evidence to the contrary.[15]  In short, Raine fails to show she and Schafer
13 were similarly situated or treated differently.  Further, even if Raine had shown she and
14 Shafer were similarly situated or treated differently, such a showing would not serve to
15 rebut any of Courtyard's articulated reasons for terminating Raine, which, as discussed
16 above, do not include the Breonna Taylor post.
17       To the extent Raine argues "Black, Laubach, and Schafer, each testified that they
18 were not aware of any general manager or employee suspended or terminated for the
19 cited reasons relating to [Raine]" (see Pl.'s Opp'n at 19:23-26), and, in particular, "for
20 violating Marriott's conflict of interest policy" or "for violating Marriott's solicitation policy"
21 (see id. at 11:17-27 (citing Tran Decl., Ex. C ("Black Dep. Vol. II") at 125:11-15, Ex. E

---

[14] In addition, the evidence is undisputed that Marriott's legal department subsequently "investigated" Schafer's posts and found no policy violation.  (See Cheng Decl., Schafer Dep. at 42:6-14, 43:10-11.)

[15] Although Raine at her deposition testified "one of [Schafer's two] posts alluded to her work life within Marriott, and she used profanity to explain it" (see Tran Decl., Raine Dep. at 145:9-11), the exhibit she submits of that post makes no reference to Marriott or even to Schafer's work, but rather, shows a photograph of what appears to be a page from a small phrasebook containing the somewhat catchy, philosophical message, "Sometimes you just have to chuck it in the f--- it bucket and move on" (see Tran Decl., Laubach Dep., Ex. 7 at 5).

("Laubach Dep. Vol. II") at 197:19-22, Ex. G ("Schafer Dep. Vol. II") at 6:13-16)), her argument likewise is unavailing. First and foremost, such testimony does not support a finding of differential treatment where, as here, there is no evidence that Black, Laubach, and Schafer were ever asked whether they were aware of anyone who had violated any such policy. Moreover, although she could not recall any names, Laubach testified she knew of a general manager who was terminated for violation of the Ethical Conduct policy. (See Tran Decl., Laubach Dep. Vol. II at 197:13-18.) Additionally, the evidence is undisputed that in 2019, a Caucasian employee who violated the Outside Business Activities, Conflict of Interest, and Solicitations policies was, like Raine, suspended, although unlike Raine, that employee resigned before termination. (See Cheng Decl., Laubach Dep. at 133:19-135:5, Ex.1 at 6.)

Further, to the extent Raine argues "similarly situated workers, particularly Caucasian workers, were never fired for the same reasons without written warnings or performance improvement plans" (see Pl.'s Opp'n at 13:7-9, 18:26-28, 20:7-9), the evidence she cites (see Laubach Dep. at 153:23-25, 98:3-100:10; Schafer Dep. at 29:19-30:11; Black Dep. at 16:22-19:1, 62:7-24) makes no reference to any similarly situated worker, Caucasian or not, nor does it reference any written warnings or performance improvement plans.

Lastly, contrary to Raine's assertion that the "temporal proximity" between her Breonna Taylor post and her termination "alone supports a finding of pretext" (see Pl.'s Opp'n at 19:10), evidence of temporal proximity, although potentially sufficient to "shift the burden to the employer to articulate a nondiscriminatory reason for the adverse employment action, does not, without more, suffice also to satisfy the secondary burden borne by the employee to show a triable issue of fact on whether the employer's articulated reason was untrue and pretextual," see Loggins v. Kaiser Permanente Internat., 151 Cal. App. 4th 1102, 1112-13 (2007) (noting "contrary argument, if accepted, would eviscerate the *McDonnell Douglas* framework . . . [by] preclud[ing] the employer from obtaining summary judgment notwithstanding otherwise unrebutted proof of

articulated legitimate reasons for the employment termination"). Moreover, here, the evidence of temporal proximity works against Raine's argument, given that Courtyard's discovery of Raine's policy violations was closer in time to her termination than its discovery of the Breonna Taylor post.

Consequently, Raine has failed to meet her burden of producing evidence from which a trier of fact could find Courtyard's proffered reasons for terminating her employment were a pretext for racial discrimination.

Accordingly, Courtyard is entitled to summary judgment on Raine's FEHA claim.[16]

## CONCLUSION

For the reasons stated above, Courtyard's motion for summary judgment is hereby GRANTED.

**IT IS SO ORDERED.**

Dated: May 8, 2023

MAXINE M. CHESNEY
United States District Judge

---

[16] As Raine's Second Cause of Action, Wrongful Termination in Violation of Public Policy, is based on the theory that Courtyard violated FEHA (see Compl. ¶ 36), the Court, for the reasons set forth above with respect to the First Cause of Action, finds Courtyard is entitled to summary judgment on Raine's Second Cause of Action as well. See Hanson v. Lucky Stores, Inc., 74 Cal. App. 4th 215, 229 (1999) (holding "because [plaintiff's] FEHA claim fail[ed], his claim for wrongful termination in violation of public policy fail[ed]"); Walls v. Kiewit Corp., 2019 WL 8685070, at *6 (C.D. Cal. Dec. 17, 2019) (holding "[t]o the extent that [wrongful termination] cause of action rests on [p]laintiff's FEHA claim for disability discrimination and retaliation, it fails because the underlying claims fail").